145 So. 493

### GARRETT et al. v. SNOWDEN.
### 4 Div. 688.

Supreme Court of Alabama.
Jan. 12, 1933.

Rushton, Crenshaw & Rushton, of Montgomery, and B. de G. Waddell, of Seale, for appellee.

**THOMAS, J.**

The decision in this case depends upon the construction of the will of Charles T. Gifford, deceased.

We may observe that the insistence of appellants is based upon rules applied to what is termed a legal life estate created or carved out by operation of law (21 C. J. 938; Benagh, Adm'r, v. Turrentine, Adm'r, 60 Ala. 557, where the widow was charged with a devastavit), and that do not apply to a conventional life estate that was created and effective by operation of the will. A testator has the right, as he sees fit, to dispose of his estate with such limitations and restrictions that are not repugnant to law. Pearce v. Pearce, 199 Ala. 491, 74 So. 952. And when this is done for the widow, she must take under the will or renounce its benefits and conditions, and take by virtue of the law that applies. Ralls v. Johnson, 200 Ala. 178, 75 So. 926.

The pertinent provisions of the will are:

"Article First: I will and direct that all my burial expenses be paid as soon as is practical and that a suitable monument be erected over my grave, the cost of which is to be determined by my Executor. Also I direct all the graves of my father's family in the Girard cemetery be put in suitable or proper condition, at a cost not to exceed $1000.00, all told.

"Article Second: I further will and direct that after the above article has been carried out, that all my just and honest debts be paid, promptly and in full.

Roy L. Smith and J. B. Hicks, both of Phenix City, for appellants.

"Article Third: I further will and bequeath all the remainder of cash on hand and in banks on deposit, to my wife, Tallulah J. Gifford, to have and to hold forever.

"Article Fourth: I further will and bequeath to my wife, Tallulah J. Gifford, the residue of my estate consisting of all lands, tenements and hereditaments and all my household furniture, securities for money, secured by life insurance, goods and chattels, and all other parts of my real and personal estate and effects whatsoever and wheresoever, to have and to hold during her natural life and at her death to be divided as follows, etc.

"Article Fourth continued: That Mrs. Maggie L. King receive the house and lot she now occupies. That Charles T. Gifford, Junior, receive all stock held in the Alabama National Life Insurance Co. of ————.

"Article Fifth: I further will and direct that after the above articles have been fully carried out that the remainder of my estate be divided equally between my sister, Mrs. Ada P. Garrett, and my nephews and nieces as follows, etc.

"Article Sixth: I authorize and empower my executors hereinafter named after the death of my wife, Tallulah J. Gifford, to sell for division all of the real estate of which I shall die seized and possessed, at public or private sale, at such times and on such terms and conditions as they, the survivors of them, shall deem meet and proper, and to execute, acknowledge and deliver all proper writings, deeds of conveyance and transfers therefor.

"Article Seventh: Should any of the gifts and bequests made by me in the Third, Fourth or Fifth Article of this my last will and testament, lapse or fail for any reason, I direct that the residuary estate and be disposed of under and in accordance with the provisions of the Fifth Article or paragraph of this my will."

██ Thus is shown the testamentary intent to give the wife all the remainder of cash on hand and in banks on deposit, and to give her the residue of the estate "to hold during her natural life and at her death to be divided" between testator's sister, nephews, and nieces, as indicated. Thus the law of the instrument is the expressed intent and will of the testator. The life estate in the residue of the estate was not dependent upon specific acts by Mrs. Gifford, as the discharge of debts (article second) and the putting in proper condition the grave or graves as indicated in article first.

██ As to the life estate so created by the will, the incumbrances or charges thereon, the life tenant may perfect and protect her interest therein, by paying off the same with her individual securities, properties, or moneys, and having done this, has the right to interplead (as she has done here by her bill and amended bill) with the remaindermen for a due and proper contribution of the principal sum so expended. The life tenant is required to pay or discharge the interest which would have been payable during the life tenancy. 16 Cyc. 604, 617, 635, 636; Peirce v. Burroughs, 58 N. H. 302; Perrine's Ex'rs v. Newell, 62 N. J. Eq. 14, 49 A. 724; Tiedeman on Real Property, § 66. The rule is thus stated in our cases: "The life tenant is required to pay, as his part of the interest on mortgaged property, such a sum as will equal the present value of the amount of interest he would probably have paid during his life as estimated by the ordinary mortality tables; the remaindermen being required to pay the balance." Abney v. Abney, 182 Ala. 213, 62 So. 64; Rushton v. McLaughlin, 213 Ala. 380, 382, 104 So. 824.

This phase of the accounting held by the register on oral testimony was:

"He further finds from the evidence before him that the claims of the Third National Bank of Columbus for $2150.00 and of Harvey Lumber Company for $350.00 were properly verified as required by law and duly filed with the Judge of Probate within the time required by law and thus became a lien or charge on the property of the estate of the said Charles T. Gifford. He further finds that under the law Abney v. Abney, 182 Ala. 213, 62 So. 64; Rushton v. McLaughlin, 213 Ala. 381, 104 So. 824, and Swaine v. Perine, 5 Johns. Ch. (N. Y.) 482, 9 Am. Dec. 324, the said Tallulah J. Gifford was not compelled to pay off said claims, but had a right to do so if she saw fit, for the joint benefit of herself, as life tenant, and the reversioners. That as life tenant she had the right to the whole income from the estate so long as she lived, subject only to the payment of taxes and repairs, which she paid, and subject also to contributions by her of only the interest on the debt during the period of her life. * * *

"The Register therefore finds and reports to the Court that a proper statement of the account between the estate of said Tallulah J. Gifford and the estate of her husband Charles T. Gifford is as follows:

1929.
July 29   To amount of indebtedness from estate of Charles T. Gifford to Estate of Tallulah J. Gifford........ $2500.00

"That it was the duty of Tallulah J. Gifford to pay to herself the interest thereon during her lifetime only and that said claim, therefore, bears interest from the date of her death, to-wit: March 13, 1930, to the date of its payment, for which her estate has a lien

on the property of the estate of her husband. * * * That under the law and the evidence it is not proper to charge the estate of Tallulah J. Gifford any amount for the failure to carry out the·First Article of the Will of Charles T. Gifford."

In the absence of expressed contrary intent of the testator, generally, where assets of an estate are insufficient to pay debts and legacies, the loss falls (1) on the residuary, (2) then on the general legacies, and (3) on the specific legacies and devises. Powell v. Labry, 210 Ala. 248, 97 So. 707; Fulenwider v. Birmingham Trust & Savings Co., 222 Ala. 95, 130 So. 801, 72 A. L. R. 702. In the instant case there is no insufficiency of properties of the estate for the purpose of payment of debts and distribution as made by the testator.

The settlement sought by the executrix and life tenant is in equity, where the respective rights of the parties are sought to be taken into account according to the expressed intent of the testator and the law having application. The register was required to ascertain the indebtedness to Mrs. Gifford and others, the fact and manner of its discharge. The court by its decree confirmed the findings and report of the register, and subrogated the claim of Mrs. Gifford for debts of the estate paid by her as an individual to protect the life estate and other properties of the estate, and ordered a sale of only so much of the personal property of the residue of that estate as would pay the principal so paid by her, and interest only from the date of termination of the life estate; and in the event of a deficiency, then only a sufficient quantum of the real estate generally devised, other than that specifically devised to Mrs. Maggie L. King. This was in accord with the rule that obtains in this jurisdiction as to such primary and secondary liabilities, where there is a deficiency of assets to pay debts under testamentary instruments. Powell v. Labry, supra.

The disbursements in question, and those of reasonable funeral expenses, stones, and monuments, are recognized as proper objects and expenditures for which payment may be made from the assets of the estate; and if paid from other funds, reimbursement therefor may be sought and made from funds and properties of the estate. 24 C. J. p. 92, §§ 520–525; Pierce v. Fulmer, 165 Ala. 344, 51 So. 728.

The register's report based on oral evidence had the force and effect of a verdict of the jury. Bidwell v. Johnson, 195 Ala. 547, 70 So. 685; Buttrey v. Buttrey, 218 Ala. 268, 118 So. 282; Cone v. Barganier, 218 Ala. 293, 118 So. 342; Southern R. Co. v. Clark, 220 Ala. 555, 126 So. 855; Bay Minette Land Co. v. Stapleton, 224 Ala. 175, 139 So. 342. And we see no reason to disturb the same.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.